Shawn AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Search of )
the Priority Mail parcel bearing tracking number **9405 5368** )
**9784 6624 8054 94**, addressed to: "Anthony Cleveland, ) Case No. 4:20 MJ 148 DDN
5676 Wilborn Dr., St. Louis, MO 63136-3546," with a )
return address of "Eric Gallegos, 1881 E. Irvinington Rd., ) SUBMITTED TO THE COURT AND
Tucson, AZ 85714." ) SIGNED BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, __JORDAN WICKS__, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

the Priority Mail parcel bearing tracking number **9405 5368 9784 6624 8054 94**, addressed to: "Anthony Cleveland, 5676 Wilborn Dr., St. Louis, MO 63136-3546," with a return address of "Eric Gallegos, 1881 E. Irvinington Rd., Tucson, AZ 85714."

located in the ____EASTERN____ District of ____MISSOURI____, there is now concealed

controlled substances and/or United States currency.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
✓ evidence of a crime;
✓ contraband, fruits of crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., §§ 846, 841(a)(1) | Conspiracy to possess with intent to distribute controlled substance(s) |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

*[signature]*

JORDAN WICKS, Postal Inspector
United States Postal Inspection Service
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: __May 22, 2020__

*[signature] David D. Noce*
*Judge's signature*

City and State: __St. Louis, MO__

David D. Noce, U.S. Magistrate Judge
*Printed name and title*

AUSA: JOHN R. MANTOVANI

## AFFIDAVIT

I, Jordan Wicks, being first duly sworn by reliable electronic means, hereby depose and state as follows:

A.  Introduction.

1.  I am a Postal Inspector with the United States Postal Inspection Service (USPIS). I have been so employed since 2018. I am currently assigned to the Contraband Interdiction and Investigation Team and am responsible for the investigation of narcotics, drug trafficking organizations, and money laundering. I have received training by the USPIS, and members of the USPIS, in the investigation of controlled substances or proceeds/payments being transported through the United States. From 2014 to 2018, I was employed as a Special Agent with the United States Army Criminal Investigation Division (CID) as a supervisor in the Special Victims Unit. From 2008 to 2014, I was employed as a Detective with the Maplewood Police Department, St. Louis County, Missouri. From 2006 to 2008, I was employed as a Narcotics Detective with the Lincoln County Sheriff's Office, Missouri. From 2001 to 2005, I was a member of Security Forces in the United States Air Force. I have experience and advanced training pertaining to drug related investigations from the USPIS, Drug Enforcement Administration (DEA), U.S. Army, Midwest Counterdrug Training Academy, Missouri Narcotic Officer's Association, the Multijurisdictional Counterdrug Task Force, as well as various other federal agencies and organizations.

2.  This affidavit is submitted for the limited purpose of establishing probable cause for the search warrant sought. I have not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient for the present purpose. The information contained in this affidavit is based upon my personal knowledge and investigation, as well as information conveyed to me by other law enforcement agents and employees as detailed below.

3.  On May 1, 2020, the USPIS St. Louis Field Office was contacted by the DEA regarding an ongoing criminal investigation. The following information was relayed by DEA Task Force Office James D. Gaddy to me:

B.  DEA Investigation Background.

1

4.     The DEA has been conducting a criminal investigation of Jorge LOPEZ-Quezada ("LOPEZ-Quezada"), Yalitza CALDERON-Olivas ("CALDERON-Olivas"), and others known and unknown regarding their multi-state Drug Trafficking Organization (DTO).

5.     During the course of their investigation, the DEA has obtained evidence of the drug conspiracy through the interception of wire and electronic communications over the following telephones: target telephone #1 (used by Keyshia HARRIS), target telephone #2 (used by Ron HILL), target telephones #3 and #4 (used by TyDarryl GRIFFIN) and target telephones #5 and #6, (used by Confidential Source-3, hereinafter: CS-3), pursuant to orders signed by District Court Judges of the Eastern District of Missouri between October 2, 2019, and the present. In February and March of 2020, investigators were able to develop and began to utilize CS-3 in this investigation.[1]

6.     As a result of intercepted communications and continued investigative efforts, LOPEZ-Quezada and CALDERON-Olivas were identified as being paramours and substantial sources of controlled substances to the Kansas City and St. Louis Metropolitan areas. Since late 2018 and through 2019, LOPEZ-Quezada and CALDERON-Olivas have been supplying the St. Louis area with multiple kilogram quantities of fentanyl, heroin, cocaine, and methamphetamine (ice). In early 2020, the DEA learned that LOPEZ-Quezada was incarcerated in Florence, Arizona following federal immigration and gun charges. However, even during his incarceration, LOPEZ-Quezada maintained control of the drug operation and was being assisted by his girlfriend, CALDERON-Olivas, who resided in the Kansas City area. On April 9, 2020, LOPEZ-Quezada was released from custody and deported to Mexico. However, since then, LOPEZ-Quezada and CALDERON-Olivas have reconnected and have continued their drug trafficking activities. On or

---

[1] During the instant investigation, investigators have established CS-3. CS-3 began cooperating with investigators during the instant investigation. CS-3 has prior felony convictions for drug offenses and is cooperating for judicial consideration. The information provided by CS-3 has been corroborated and is believed to be reliable based upon law enforcement actions, including recorded telephone conversations, recorded face-to-face meetings, pen register information, and telephone toll analysis. CS-3's information has never been found to be false or misleading and has been utilized in both the investigation of the TyDarryl GRIFFIN St. Louis-based DTO and the LOPEZ-Quezada DTO. Currently, investigators are utilizing CS-3 to monitor consensual Title III intercepts with the target suspects and other potential co-conspirators. On or about March 7, 2020, CS-3 arranged a three kilogram cocaine transaction with a target subject over the consensual wiretap on CS-3's telephone. This was not done at the direction of controlling officers and not sanctioned by DEA. After being confronted about the transaction, CS-3 indicated he/she misunderstood his directive and was under the impression as long as deals were made over the consensual wiretap he/she was acting within the scope of his assignment. Upon receiving further direction, CS-3 has had no further issues during his/her work with DEA.

around April 7, 2020 and days prior to LOPEZ-Quezada being released and being deported, CALDERON-Olivas contacted CS-3 and informed CS-3 that CALDERDON-Olivas was leaving the Kansas City area in order to meet with LOPEZ-Quezada as he was being released from a jail in Florence, Arizona.

C.     DEA Intercepts of LOPEZ-Quezada and CALDERSON-Olivas.

7.     On March 9, 2020, a consensual Title III intercept was initiated on the cellular telephone utilized by CS-3. LOPEZ-Quezada and CALDERON-Olivas have both been intercepted over the consensual Title III using Mexico-based telephone number 52-16642808910. Consensual monitoring of CS-3's cellular telephone is ongoing. Results of the intercepted communications obtained pursuant to the consensual Title III are discussed in more detail below.

8.     In early April of 2020, investigators, utilizing CS-3, began to organize a controlled delivery of kilogram amounts of heroin and/or fentanyl to the St. Louis area while LOPEZ-Quezada was still incarcerated. CS-3 and LOPEZ-Quezada discussed the shipment and the details would be finalized once LOPEZ-Quezada was released on April 9, 2020.

D.     Shipment of Subject Package 1 from LOPEZ-Quezada to CS-3.

9.     In the last week of April of 2020, investigators monitored several Consensual Title III intercepts between CS-3 and LOPEZ-Quezada. The subject matter of these conversations was CS-3 and LOPEZ-Quezada negotiating a shipment of fentanyl and/or heroin to the St. Louis area to be transported via unknown shipping company. Additionally, LOPEZ-Quezada requested CS-3 to provide LOPEZ-Quezada with an address where CS-3 wanted the shipment of fentanyl and/or heroin to be sent to. On April 27, 2020, as directed by investigators, CS-3 provided LOPEZ-Quezada the address of 9223 Riverwood Drive, St. Louis, Missouri 63136 to receive the drug shipment. On the following day, April 28, 2020, LOPEZ-Quezada provided CS-3 the fictitious recipient name of "Arturo Cesar Carrillo" that the package containing the fentanyl and/or heroin would be addressed to.

10.     On April 30, 2020, at approximately 6:00 p.m., DEA investigators were contacted by CS-3 who indicated CS-3 had spoken to LOPEZ-Quezada over the Consensual Title III monitored telephone. During the recorded conversation, LOPEZ-Quezada instructed CS-3 to

download the messaging app "Whatsapp" to allow for LOPEZ-Quezada to send CS-3 a photograph of the shipping label of the package of drugs that LOPEZ-Quezada was having shipped. CS-3 advised DEA investigators that shortly after downloading the messaging app "Whatsapp," LOPEZ-Quezada sent a photograph through "Whatsapp" depicting a USPS Priority Mail shipping label. The shipping label listed the recipient of the package as "Arturo Cesar Carrillo, 9223 Riverwood Drive, St. Louis, Missouri 63136," along with a USPS Priority Mail package: 9405 5368 9784 6582 8915 53 (hereafter "Subject Package 1"). The picture of the shipping label matched the address given by CS-3 to LOPEZ-Quezada and fictitious name LOPEZ-Quezada provided to CS-3 for the drug shipment. At that time, DEA investigators immediately contacted the USPIS and requested their assistance.

E.     Identification and Seizure of Subject Package 1 by USPIS.

11.    On May 1, 2020, I reviewed USPS business records regarding Subject Package 1. The records reflected the package was mailed from Metairie, Louisiana (zip code: 70002). However, an available image of the shipping label for Subject Package 1 displayed it was actually mailed from Houston, Texas. I know from training and experience, that drug traffickers often use alternate mailing locations for contraband packages in an effort to avoid law enforcement detection.

12.    On May 4, 2020, I reviewed USPS business records and confirmed that Subject Package 1 had arrived at the Jennings Post Office (zip code: 63136). I immediately responded to the Jennings Post Office and conducted a review of Subject Package 1. Subject Package 1 was addressed to "ARTURO CEASAR CARRILLO 9223 RIVERWOOD DR ST. LOUIS MO 63136-5040," with a return address of "BEN MARQUEZ 1617 FANNIN HOUSTON TX 70002." This recipient name and address matched the information DEA had provided from CS-3. Based on the above information, I applied for a search warrant for this package.

13.    On May 4, 2020, the Honorable United States Magistrate Judge Nannette Baker issued a search warrant (4:20 MJ 5092 NAB) for Subject Package 1. A clear vacuum sealed bag containing a large amount of blue and green in color round shaped pills was found to be concealed within Subject Package 1. The St. Louis Metropolitan Police Department Crime Laboratory later conducted an analysis on a portion of these pills and confirmed the presence of fentanyl and/or a

fentanyl analogue.

F.     Shipment of **Subject Package 2** from LOPEZ-Quezada to CS-3.

14.    Since the arrival of Subject Package 1, CS-3 has maintained consistent communication with LOPEZ-Quezada. CS-3 has portrayed that the fictitious St. Louis-based distributors had received the pills and were currently attempting to distribute the pills throughout the St. Louis area. However, the subject matter of the majority of CS-3 and LOPEZ-Quezada's recorded conversations have consisted of discussion of additional packages being sent to the St. Louis area for CS-3, orchestrated by LOPEZ-Quezada to contain fentanyl and/or heroin.

15.    On or about May 7, 2020, LOPEZ-Quezada requested CS-3 provide LOPEZ-Quezada with a second address where CS-3 wanted the next shipment of fentanyl and/or heroin to be sent to, as well as another fictitious recipient name. As directed by investigators, CS-3 provided LOPEZ-Quezada with the address of 5676 Wilborn Drive, St. Louis, Missouri 63136, along with the fictitious recipient name of "Anthony Cleveland."

16.    On May 8, 2020, at approximately 7:40 p.m., CS-3 notified DEA investigators that LOPEZ-Quezada had sent a photograph through "Whatsapp" depicting a USPS Priority Mail shipping label. The shipping label listed the recipient of the package as "**Anthony Cleveland, 5676 Wilborn Dr, St. Louis, Missouri 63136**," along with a USPS Priority Mail package: **9405 5368 9784 6624 8054 94** (hereafter "**Subject Package 2**"). The picture of the shipping label matched the name and address given by CS-3 to LOPEZ-Quezada. DEA investigators again immediately contacted the USPIS and requested their assistance.

G.     Identification of the **Subject Package 2** by USPIS.

17.    On May 9, 2020, I reviewed USPS business records regarding Subject Package 2. The records reflected a shipping label had been created for Priority Mail package **9405 5368 9784 6624 8054 94** (**Subject Package 2**). However, **Subject Package 2** had not been transferred to the custody of the USPS to enter the mail stream. Over the next several weeks, I monitored USPS business records daily to determine when **Subject Package 2** entered the mail stream in route the St. Louis area.

18. On May 20, 2020, I reviewed USPS business records and confirmed that **Subject Package 2** had entered the USPS mail stream in Tucson, Arizona (zip code: 85726). USPS business records reflected the package was in transit to 5676 Wilborn Drive, St. Louis, Missouri 63136.

19. On May 22, 2020, I responded to the USPS National Distribution Center in Hazelwood, Missouri and conducted a review of **Subject Package 2**. **Subject Package 2** displayed a preprinted label and was addressed to "ANTHONY CLEVELAND 5676 WILBORN DR ST. LOUIS MO 63136-3546," and listed the return address as "ERIC GALLEGOS 1881 E IRVININGTON RD TUCSON AZ 85714." This recipient name and address matched the information DEA had provided from CS-3. Based on this information, I removed Subject Package #2 from the mail stream and contacted Detective Sebek and requested a canine review of **Subject Package 2**.

20. On May 22, 2020, I met with Detective Sebek, who was accompanied by his narcotics detection trained canine, Pippi. **Subject Package 2** was placed in an area not known to have been previously contaminated by a narcotic odor. Detective Sebek had Pippi search this area. Upon arriving at **Subject Package 2**, I observed and Detective Sebek advised that Pippi reacted in a positive manner, indicating to the presence of a narcotic odor.

21. **Subject Package 2** is a white box and measures approximately 7.25 inches, by 7.25 inches, by 6.5 inches, and records reflect it weighs approximately three pounds and fourteen ounces. Based on the above information, it is my belief that the package will contain narcotics, a violation of Title 21, United States Code, Sections 841(a)(1) and 846.

22. **Subject Package 2** is currently in the custody of Postal Inspector Jordan Wicks in the Eastern District of Missouri. Attached herewith is a picture of the mailing label for **Subject Package 2** and a copy of the qualifications for Detective Sebek's canine, Pippi.

23. Because this investigation is ongoing and its success would be jeopardized if the contents of this affidavit were made public, Inspectors request that this affidavit be sealed until further order of the Court.

**I state under the penalty of perjury that the foregoing is true and correct.**

*[signature]*

JORDAN R. WICKS
U.S. Postal Inspector

**Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41** this __22nd__ day of May, 2020.

*[signature]*

DAVID D. NOCE
United States Magistrate Judge
Eastern District of Missouri

**P**

US POSTAGE AND FEES PAID
2020-05-08
85714
C26321
ComPlsPrice
FLAT RATE SML BOX          0901000000605



## USPS PRIORITY MAIL

ERIC GALLEGOS
1881 E IRVINGTON RD
TUCSON AZ 85714

0004

C094

ANTHONY CLEVELAND
5676 WILBORN DR
ST. LOUIS MO 63136-3546

### USPS TRACKING #



9405 5368 9784 6624 8054 94

WHEN USED INTERNATIONALLY, AFFIX CUSTOMS DECLARATION.

^ Domestic only.
* Tracking outside the U.S
  major International desti

UNITED STATES POSTAL SERVICE®

## St. Louis County Police Department
Division of Criminal Investigations Canine Detective
Canine Probable Cause Affidavit of Qualifications
Handler: Detective David Sebek, DSN 3341
Canine "Pippi" DSN 46

I, Detective David Sebek, DSN 3341, have been a Commissioned Police Officer of the St. Louis County Police Department since January 5, 2001. I have completed 200 hours of Missouri P.O.S.T. required Law Enforcement Academy requirements. Canine "Pippi" and I are currently assigned to the St. Louis County Police Department's Division of Criminal Investigation's Drug Enforcement Unit.

Canine Pippi is a black and white colored, female, German Shorthair Pointer. She was born on February 8, 2013. Canine Pippi and I attended and completed the "Basic Police Canine Training Course for Narcotics Detection", from October 3, 2015, through October 30, 2015. This course was held at Shallow Creek Kennels, located in Sharpsville, PA. The training course consisted of four weeks of instruction and application of canine obedience, narcotics/controlled substance detection. Canine Pippi and I were certified by the North American Police Work Dog Association (NAPWDA) as an accredited Narcotic Detection Canine team on October 30, 2015.

Canine Pippi has been trained to sniff and alert to the distinctive odors of controlled substances including: Heroin, Cocaine, Methamphetamine, and Marijuana. Canine Pippi alerts to these odors in a passive manner by sitting at, or as close as she can get, to the source of the odor.

Canine Pippi and I were last annually re-certified by the North American Police Work Dog Association (NAPWDA) as an accredited Narcotic Detection Canine team on April 29, 2019.

Since Canine Pippi and I began working, she had been responsible for the seizure of approximately 1,681.5 lbs of marijuana, approximately 6.75 lbs of heroin, 217 lbs of methamphetamine, and 39 lbs of cocaine. Canine Pippi has also been responsible for the seizure of approximately $2,483,999 in smuggled bulk US currency.

Canine Pippi and I train a minimum of four hours per week, in the areas of narcotic detection with the St. Louis County Police Department's Canine Unit and on our own time.

This affidavit is current as of January 23, 2020.

Detective David Sebek, DSN 3341
St. Louis County Police Department
Division of Criminal Investigations, Drug Enforcement Unit
7900 Forsyth Blvd
Clayton, MO 63105
(636) 529-8225